IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

E. Ishmael Parsai
8874 Linden Lake Road
Sylvania, Ohio 43615,

   Plaintiff

vs.

The University of Toledo
3000 Arlington Avenue
Toledo, Ohio 43614

and

Christopher J. Cooper
Mail Stop 1018
3000 Arlington Avenue
Toledo, Ohio 43614

and

Linda Speer
The University of Toledo
Department of Physician Assistant Studies
3333 Glendale Avenue
Toledo, Ohio 43614.

and

Case No. 3:23-cv-2141

<u>COMPLAINT; JURY DEMAND
ENDORSED HEREON</u>

1

Andy Casabianca
The University of Toledo
Associate Professor, Anesthesiology
3065 Arlington Avenue
Toledo, OH 43614

and

Bina Joe
The University of Toledo College of Medicine and Life Sciences
Mail Stop 1008
3000 Transverse Drive
Toledo, Ohio 43614-2598

and

Beata Lecka-Czernik
The University of Toledo College of Medicine and Life Sciences
Mail Stop 1008
3000 Transverse Drive
Toledo, Ohio 43614-2598

and

James Van Hook
The University of Toledo
Department of Obstetrics and Gynecology
3000 Arlington Avenue
Toledo, Ohio 43614

and

Kandace Williams
The University of Toledo College of Medicine and Life Sciences
Mail Stop 1010
3000 Arlington Avenue
Toledo, Ohio 43614

and

Risa Dickson
The University of Toledo
University Hall 3340F
2801 W. Bancroft Street
Toledo, Ohio 43606,

    Defendants.

COUNT I
42 UNITED STATES CODE SECTION 1983
VIOLATIONS OF PROCEDURAL DUE PROCESS RIGHTS
UNITED STATES CONSTITUTION

    1. This count of the Complaint is brought pursuant to 42 U.S.C. Sections 1983 and 1988, regarding violations of the Due Process Clause of the United States Constitution. It involves deprivation of Plaintiff's procedural due process rights.

    2. Plaintiff Ishmael Parsai is an individual and currently resides in Sylvania, Lucas County, Ohio.

    3. Parsai was born in the country of Iran. Following his high school education in Iran, where he specialized in Mathematics and Physics, he made the choice to pursue further education in the United States. He set foot in the United States in August 1976, and upon his initial arrival, he opted to enroll in the English Language Center (ELS) located within the University of Oklahoma, situated in Norman, Oklahoma. After diligently attending ELS for several months and achieving the requisite grades, he made a transfer to Independence Community College in Independence, Kansas, where he spent two years furthering his education. Subsequently, he transitioned to Kansas State University, situated in Manhattan, Kansas, where he successfully obtained his degree in Electrical Engineering.

    4. Financially, it was difficult during his early years in the United States. Parsai worked in odd jobs such as construction, which required heavy labor but paid more than minimum wage.

3

During the last summer of his undergraduate college years, he worked in Wichita, Kansas, one job during the day, a second job during the late evening and into the night, and a third job on weekends as a custodial worker.

5. After receiving his BS degree in Electrical Engineering from Kansas State University, he married his wife Parvin, who was also a student at Kansas State University. He continued his education, receiving a MS degree and a Ph.D. (ABD) in Nuclear Physics at the University of Missouri, Columbia, Missouri. Prior to completing his doctoral dissertation, the revolution in Iran had put his family back home in financial constraint, resulting in Parsai taking a year off from his education so that he could work and send funds back to Iran to support his family. When he returned to school, he decided to pursue a MS degree in Medical Physics, which was an emerging subfield of physics. Upon completion of that degree program, he was able to land his first job in his field at St. Francis Hospital, Wichita, Kansas, starting in May 1988.

6. Three years later Parsai and his wife moved to Oklahoma City, receiving a better job opportunity at Mercy Hospital, where he worked for the next three years. During this time he and his wife had two children. In 1993, after gaining more experience in Medical Physics, Parsai and his family moved to Toledo, Ohio, where he was offered and accepted a job at the Medical College of Ohio (later to become part of The University of Toledo) as a clinical medical physicist in the Radiation Oncology Department, giving him the opportunity to work with a world-renowned Radiation Oncologist, Professor Ralph Dobelbower. Accepting this job offer also provided Parsai the opportunity to pursue his Doctoral degree in Medical Physics. He started in 1995 as an Assistant Professor in the Medical College of Ohio, in Toledo, moved up to Associate Professor in 2000, and to a tenured full professor in 2006.

7. Parsai and his wife were committed to making a good home for their family. Parsai made it a regular practice of reminding their children that "We are an example of why America is a land of opportunity!" After their children left home to pursue their own careers, Parsai continued working hard to stay competitive in his career.

8. Parsai was with the College of Medicine and Life Sciences (formerly the Medical College of Ohio) for more than 29 years. Parsai was the Director of the Graduate Medical Physics Program and Chief of the Medical Physics Division in the Department of Radiation Oncology, The University of Toledo, as well as a Prestige Professor of Physics and Astronomy, from April 2000 to September 22, 2022, at which time his employment at The University of Toledo was terminated without proper cause by defendants The University of Toledo and Christopher J. Cooper.

9. Parsai was well-qualified for the positions he held at The University of Toledo and performed his job well. He is certified by the American Board of Radiology (ABR) and the American Board of Medical Physics (ABMP) in Therapeutic Medical Physics and Radiation Oncology Physics respectively. He is also certified by the Ohio Department of Health as a Certified Radiation Expert.

10. Parsai has outstanding academic and clinical records as a research scientist, with 79 peer-reviewed publications, 9 book chapters, 182 published abstracts, and 8 issued U.S. patents. He and his co-authors received the Award of Excellence for the Best Radiation Measurement Article in 2016, published in the Journal of Applied Clinical Medical Physics, and the ASTRO's (American Society for Radiation Oncology) First Place Award for Poster in 2010. His new book, "A Practical Guide to Inversely Optimized Treatment Planning" is in print by the Medical Physics Publishing Company. Some of his patents for medical products are licensed to manufacturers by The University

of Toledo and are used globally. The University of Toledo has received more than $2.5 million in royalties from his patents. Parsai has also received more than $2 million in grant funding. At the time of his termination, he was involved in three IRB research projects which were work in progress at The University of Toledo. IRB stands for Internal Review Board, which is utilized at The University of Toledo to allow for application of new modalities outside of FDA (U.S. Food and Drug Administration) approval.

11. Defendant Cooper, during relevant times, was the Dean of the College of Medicine and Life Sciences, Executive Vice President for Clinical Affairs, Vice Provost for Educational Health Affairs at The University of Toledo. Cooper is being sued in both his official and individual capacity.

12. Defendant Linda Speer, during relevant times, was the Professor and Chair, Department of Family Medicine, at The University of Toledo. Speer is being sued in both her official and individual capacity.

13. Defendant Andy Casabianca, during relevant times, was the Chair, Department of Anesthesiology, at The University of Toledo. Casabianca is being sued in both his official and individual capacity.

14. Defendant Bina Joe, during relevant times, was the Chair, Department of Physiology and Pharmacology, at The University of Toledo. Joe is being sued in both her official and individual capacity.

15. Defendant Beata Lecka-Czernik, during relevant times, was a member of the Center for Diabetes and Endocrine and Professor of Orthopedic Surgery, at The University of Toledo. Lecka-Czernik is being sued in both her official and individual capacity.

16. Defendant James Van Hook, during relevant times, was the Chair, OBGYN Department,

at The University of Toledo. Van Hook is being sued in both his official and individual capacity.

17. Defendant Kandace Williams, during relevant times, was Associate Dean for the College of Medicine & Life Sciences Graduate Programs at The University of Toledo. Williams is being sued in both her official and individual capacity.

18. Defendant Risa Dickson held the position of Interim Provost for the University of Toledo, from approximately August 1, 2022 to July 31, 2023. Dickson is being sued in both her official and individual capacity.

19. Parsai had and still has a protected property interest and liberty interest in continued employment and maintaining his good name regarding the positions he held at The University of Toledo.

20. On September 22, 2023, defendants The University of Toledo and Cooper issued Parsai a letter of termination, a copy of which is attached as Exhibit A and incorporated herein.

21. Prior to his termination, defendants The University of Toledo and Cooper did not provide Parsai adequate notice of the charges against him.

22. The letter of termination, i.e., Exhibit A, references the "Faculty Rules and Regulations" with a specific reference to Article I, section (T)(1)(b)(7). A copy of the "Faculty Rules and Regulations," including Article I, section (T)(1)(b)(7), is attached as Exhibit B and incorporated herein.

23. Article I, section T(1)(b), of the "Faculty Rules and Regulations" is titled "Termination for Cause." Article I, section (T)(1)(b)(7), of the "Faculty Rules and Regulations" states as follows: "Causes for termination of a continuous appointment may include: . . . (7) Violation of University policy, rules, regulations, procedures or bylaws" (footnote omitted).

24. Pursuant to the letter of termination, Parsai timely appealed his termination on October 5, 2022. Specifically, the letter of termination states, "You have the right of appeal and due process in accordance with the Faculty Grievance and Appeals policy 3364-72-51. . . ."

25. Regarding an appeal, the letter of termination references The University of Toledo policy titled "Faculty Grievance and Appeals," policy 3364-72-51. A copy of this policy is attached as Exhibit C and incorporated herein.

26. The hearing regarding the appeal took place on January 6, 2023. Pursuant to policy 3364-72-51, a Hearing Committee of the Faculty Grievance Committee conducted the hearing. The Chair of the Hearing Committee was defendant Speer. The other members of the Hearing Committee were defendants Casabianca, Joe, Lecka-Czernik, and Van Hook. Although not a member of the Hearing Committee, defendant Williams attended the hearing. Williams presented herself at the hearing as the safety officer and stated that she was observing to assure a fair process.

27. Parsai attended the hearing and testified as a witness. Cooper also attended the hearing and testified as a witness, although during the first part of the hearing he stayed in his office which was immediately adjacent to the hearing room with his office door open so that he could hear what was being said at the hearing.

28. According to the policy, section 3364-72-51(D)(5)(b)(iii), "[a] record of the proceedings will be made, including the collection of all testimony presented and evidence provided to the hearing committee."

29. According to the policy, section 3364-72-51(D)(5)(b)(ii),

> [T]he Hearing Committee will have the power to excuse from the proceeding any witness or witnesses during the testimony of other witnesses. It will be discretionary with the hearing committee to determine the propriety of the attendance of any other

persons;

30. According to the policy, section 3364-72-51(D)(5)(c),

The hearing committee will:
(i) Determine whether the issues raised are grievable under the standard of review set forth in paragraph (C) of this rule;
(ii) Review the evidence, testimony and other information it deems relevant and deliberate;
(iii) Make separate findings of fact on the substantive issues presented; and
(iv) Issue recommendation(s) of the hearing committee, as to corrective action, if any, that might be imposed.

31. According to the policy, section 3364-72-51(D)(6),

The recommendation(s) of the hearing committee will be made by majority vote in writing, as certified by the committee chair's signature. Recommendation(s) of the hearing committee will not consider any evidence, documentation or testimony taken outside the hearing unless agreed to by mutual consent of the grievant, the university and the hearing committee. If agreement is not reached, a new hearing may be held.

32. According to the policy, section 3364-72-51(D)(7),

The hearing committee will complete its deliberations and render its recommendation(s) within twenty working days of completion of the deliberations to the level of administrator above involved party or parties, beginning with the chancellor or provost, with a copy to the dean of the appropriate college and to each party to the dispute. If the chancellor or the provost is a part of the grievance, recommendations of the committee will go to the president. If the president is a part of the grievance, recommendations and decisions of the committee will go to the board of trustees, through the appropriate board committee.

33. According to the policy, section 3364-72-51(D)(8),

The final decision will be made by the chancellor or the provost or the president, whichever is the governing level above the parties in grievance, within fourteen working days from the date upon which the recommendation of the hearing committee is received. The grievant and all other affected parties will be informed in writing of the final decision.

34. According to the policy, section 3364-72-51(D)(9),

The grievant may appeal the decision in writing within twenty working days of the

date in which notice was given of the final decision to the next level of governance above the decision maker. . . .

35. Parsai was not provided the recommendation(s) of the Hearing Committee by defendants The University of Toledo, Cooper, Speer, Casabianca, Joe, Lecka-Czernik, Van Hook, Williams, or Dickson, even though The University of Toledo's appeal and due process policy required that the "hearing committee will complete its deliberations and render its recommendation(s) within twenty working day of completion of the deliberations . . . with a copy to the dean of the appropriate college and to each party to the dispute." Additionally, Parsai was not timely informed by the defendants The University of Toledo, Cooper, Speer, Casabianca, Joe, Lecka-Czernik, Van Hook, Williams, or Dickson, of the final decision regarding the recommendation(s) of the Hearing Committee. Dickson apparently confirmed the recommendation of the Hearing Committee to uphold Parsai's termination. As a result of not receiving a copy of the recommendation(s) and not being timely informed of the final decision regarding his appeal, Parsai was denied the opportunity to appeal the Hearing Committee's recommendation(s) since he had no knowledge of the recommendation(s) nor did he have timely knowledge of the final decision. Parsai received the first notification of the Hearing Committee's recommendation to deny his appeal and the subsequent action by Interim Provost Dickson affirming the denial of Parsai's appeal around May 19, 2023. This information was conveyed through a letter signed by Janelle Schaller, Deputy General Counsel of The University of Toledo. The letter, dated May 17, 2023, was addressed to the Ohio Civil Rights Commission (OCRC), and Parsai became aware of its contents through communication from the OCRC.

36. During all relevant times defendants The University of Toledo, Cooper, Speer, Casabianca, Joe, Lecka-Czernik, Van Hook, Williams, and Dickson, acted under color and pretense

of law, to wit: under color of the statutes, ordinances, regulations, customs, and usages of the State of Ohio, including The University of Toledo.

37. Defendants' The University of Toledo and Cooper's decision to terminate Parsai's employment and then the decision by the defendants The University of Toledo and Dickson to uphold the termination on appeal was not supported by substantial evidence and was arbitrary, capricious, discriminatory, and an abuse of discretion.

38. Defendants' The University of Toledo and Cooper's decision to terminate Parsai's employment was not rational and not made in good faith.

39. Parsai has sustained injuries due to Defendants' actions, as set out in this Complaint, in the form of lost earnings, impairment of future employment prospects, emotional suffering, mental anguish, humiliation, indignity, inconvenience, and damage to his reputation.

40. Defendant Cooper acted maliciously.

COUNT II
BREACH OF CONTRACT

41. The allegations set forth in paragraphs 1 through 65 of this Complaint are incorporated herein by reference.

42. Parsai and Defendants The University of Toledo and Cooper entered into a written agreement constituting a contract, which is attached hereto as Exhibit D and incorporated herein.

43. Parsai has engaged in good behavior during all relevant time periods - including adherence to University policies and procedures, his Letter of Intent (if any), and the Faculty Rules and Regulations, yet defendants The University of Toledo and Cooper terminated Parsai's employment contrary to the written agreement.

## COUNT III
## BREACH OF CONTRACT

44. The allegations set forth in paragraphs 1 through 65 of this Complaint are incorporated herein by reference.

45. Defendant The University of Toledo's policies and regulations referenced in this Complaint constitute contracts between The University of Toledo and its faculty, including Parsai, yet defendant The University of Toledo did not follow these policies and regulations as set out in Count I of this Complaint.

## COUNT IV

TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. §§ 2000e *et seq.*)
AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C. § 621 *et seq.*)
CIVIL RIGHTS ACT OF 1866 (42 U.S.C. § 1981)
CIVIL RIGHT ACT OF 1871 (42 U.S.C. §1983)
RACE/NATIONAL ORIGIN/ANCESTRY DISCRIMINATION
AGE DISCRIMINATION

46. The allegations set forth in paragraphs 1 through 65 of this Complaint are incorporated herein by reference.

47. Parsai's race, national origin, and ancestry is Iranian.

48. At the time of his termination, Parsai was 69 years of age.

49. Parsai is a citizen of the United States. He became a citizen of the United States in January 1988. He is proud of his country - the United States of America - and would never do anything to hurt it.

50. On December 17, 2020, Jeremy Sweezy of the Los Alamos National Laboratory notified Timothy Valentine that an Iranian student at The University of Toledo who was claiming to be using MCNP® was requesting access to the MCNP user email forum. Timothy Valentine is employed by

the Oak Ridge National Laboratory and holds the position of Director, Radiation Safety Information Computational Center, Nuclear Energy and Fuel Cycle Division, Oak Ridge National Laboratory. MCNP® is a Monte Carlo code developed by the Los Alamos National Laboratory that is regulated by the U.S. National Nuclear Security Administration under 10 CFR 810. Access to MCNP® is strictly controlled and in general is allowed to certain U.S. citizens, U.S. legal permanent residents, and citizens listed in Appendix A of 10 CFR 810. Citizens of Iran are strictly prohibited from access to MCNP® under 10 CFR 810 and other Federal laws that pertain to citizens of embargoed countries.

51. Due to the nature of his work, Parsai has authorized access by the U.S. government to MCNP®. However, he has not used the MCNP code for many years because of his familiarity with and availability of other numerical codes in open-access forums.

52. On January 6, 2021, Valentine communicated with Sonjay Khare, the Chair of the Department of Physics and Astronomy at The University of Toledo, regarding the Iranian student in that department. In the communication Valentine informed Khare that the Iranian student was an Iranian citizen and that this student was in direct violation of U.S. Federal regulations for using MCNP® (assuming the student was using the MCNP®). Valentine further informed Khare in the communication that U.S. organizations that provide access to the MCNP® to individuals who are not licensed for the code may also be held accountable. Toward the end of the communication, Valentine stated the following regarding the student:

> We would be grateful if you could inquire with her major advisor as to whether or not she does have access to and is using the MCNP® code. If her assertion is true, then this matter will need to be reported to the U.S. National Nuclear Security Administration for adjudication. We would appreciate it if you and her major advisor would respond to our request for information such that this matter may be resolved.

53. Khare forwarded Valentine's email to Parsai as Parsai was the Director of the Medical Physics program. Parsai then consulted with The University of Toledo Associate General Counsel Jessica Visser and Khare regarding Valentine's January 6, 2021 communication. Khare pointed out to Parsai in a January 6, 2021 communication that this matter involved "possible US Federal Law non-compliance."

54. Attorney Visser dictated the response which Parsai utilized in responding to Valentine's January 6, 2021 communication on January 7, 2021. Valentine then replied to Parsai's January 7, 2021 communication on January 8, 2021, stating in part as follows:

> [The student] utilized a version of MCNP® without the approval of the U.S. Federal government. [The student] has published several papers on the use of MCNPX for medical physics applications while at the Mashad University of Medical Sciences in Mashad, Iran. However, no person in Iran is legally licensed to use any version of MCNP®; therefore, [the student] was doing so in direct violation of U.S. Federal regulations.

55. On June 14 and 15, 2022, Sara Hinderer, Special Agent, U.S. Department of Energy, Office of Inspector General, and two other Federal agents interviewed the student and several other people, including Parsai. The interviews took place at The University of Toledo. Parsai's interview took place on June 15, 2022.

56. Sara Wisniewski, Senior Associate General Counsel for The University of Toledo, appeared at Parsai's interview with the three federal agents on June 15, 2022. However, she left the interview shortly before the questioning started, stating that this investigation has no relevance to The University of Toledo and the federal agents just want to speak to Parsai as an individual.

57. The June 15, 2022 interview and questioning of Parsai by the three federal agents focused on Parsai being from Iran and his department at The University of Toledo having graduate students

14

from Iran. Parsai was asked why he has four out of five Ph.D. students from Iran. Another question he was asked was as follows: How do you know whether a student receives an input file for a nuclear weapon from the Iranian Government, runs it on the MCNP Code, and then gives the results to the Iranian Government the next day? Parsai was put in the position of defending The University of Toledo's admission of students from Iran and defending whether these students are spies for the Iranian Government. The behavior of the federal agents illustrated a bias against Iranians, even those lawfully in the United States. Because Parsai had been abandoned by The University of Toledo attorney, namely Sara Wisniewski, at the beginning of the interview, he was left defenseless by The University of Toledo administration. Parsai said nothing untrue to the federal agents. Parsai did not engage in any fabrication or deception. Noteworthy is the fact that toward the beginning of the interview, but after Attorney Wisniewski had left, the three federal agents showed Parsai emails from the 1990's to the present. Apparently The University of Toledo cooperated with the Federal Agents in the U.S. Government investigation of Parsai. Special Agent Hinderer came prepared for the interview with an extensive folder containing many emails Parsai had authored since the commencement of Parsai's employment at MCO (the previous name of The University of Toledo Medical Center) in September 1993 up to the present day. During the interview, Hinderer systematically presented these emails, one page at a time, reading out the subject lines and inquiring if Parsai had authored each email. The vast majority of the emails, exceeding 99% of them, pertained to work-related matters. However, there may have been a few personal emails included in the selection.

58. The University of Toledo was concerned about it being criminally liable regarding the matter. This is illustrated, for example, by a communication titled: "Use of MCNP® at the

University of Toledo," sent by Williams to Parsai and The University of Toledo Associate General Counsel Jessica Visser on January 8, 2021, where Williams said the following:

> My read on it is that [the student] should not publish anything else that has the use of this code described in it, including [the student's] dissertation, or you or Diana [the student's advisor], and UT will then be involved in illegal activities against the US government. They clearly have investigated everything that [the student] has published. [The student] may yet be contacted by them because she used it in Iran.
> . . .

59. Another example illustrating The University of Toledo's concern about being criminally liable regarding the matter is that it hired outside counsel, Barnes & Thornburg, to conduct an investigation. This investigation conducted by outside counsel retained by The University of Toledo, however, was tainted and biased in that although multiple University of Toledo employees were interviewed as part of this investigation, Parsai was not interviewed and did not even know such interviews were taking place at the time even though one of the main focuses of the investigation was on Parsai and his interaction with people who were Iranian.

60. Nicholas Sperling is a 47-year-old non-Iranian American born faculty member with The University of Toledo in the Department of Radiation Oncology. He currently is an Assistant Professor in the department. Because of his fluency with computer programming and networking, he served as the information technology person in the department and was much more involved with the student's project than Parsai ever was. Unlike Parsai, whose employment was terminated on September 22, 2022, Sperling was placed on paid administrative leave on September 22, 2022. Sperling's paid administrative leave was lifted in December 2022, at which time he returned to his regular work duties.

61. Defendants The University of Toledo and Cooper terminated Parsai's employment, at

least in material part, due to his race/national origin/ancestry and/or age.

62. Defendants The University of Toledo and Cooper acted maliciously or with reckless indifference in terminating Parsai's employment.

63. The University of Toledo and Cooper's conduct in terminating Parsai's employment was willful.

64. Parsai file a Charge Of Discrimination with the Ohio Civil Rights Commission and the U.S. Equal Employment Opportunity Commission (EEOC) on March 13, 2023. A copy of the Charge Of Discrimination is attached to this Complaint as Exhibit E and incorporated herein.

65. The EEOC issued a Notice Of Right To Sue on September 5, 2023, which was subsequently received by Parsai. A copy of the Notice Of Right To Sue is attached to this Complaint as Exhibit F and incorporated herein.

WHEREFORE, Plaintiff Parsai prays for judgment against all Defendants (unless otherwise noted), jointly and severally, as follows:

As to Count I,

1. Reinstatement of Parsai to the position he held at the time of his termination, with seniority and pay rate restored, or in the alternative, reasonable front pay;

2. Full back pay;

3. Compensatory damages in an amount to be determined at trial;

4. (Against defendant Cooper only) Punitive damages in an amount to be determined at trial;

5. Reasonable attorney's fees, expert witness fees, costs, prejudgment interest and post-judgment interest; and

6. Such other and further relief as this Court may deem just and proper.

As to Count II (against defendants The University of Toledo and Cooper only),

1. Reinstatement of Parsai to the position he held at the time of his termination, with seniority and pay rate restored, or in the alternative, reasonable front pay;

2. Full back pay;

3. Compensatory damages in an amount to be determined at trial;

4. (Against defendant Cooper only) Punitive damages in an amount to be determined at trial;

5. Reasonable attorney's fees, expert witness fees, costs, prejudgment interest and post-judgment interest; and

6. Such other and further relief as this Court may deem just and proper.

As to Count III (against defendant The University of Toledo only),

1. Reinstatement of Parsai to the position he held at the time of his termination, with seniority and pay rate restored, or in the alternative, reasonable front pay;

2. Full back pay;

3. Compensatory damages in the amount to be determined at trial;

4. Reasonable attorney's fees, expert witness fees, costs, prejudgment interest and post-judgment interest; and

5. Such other and further relief as this Court may deem just and proper.

As to County IV (against defendants The University of Toledo, Cooper, and Dickson only),

1. Reinstatement of Parsai to the position he held at the time of his termination, with seniority and pay rate restored, or in the alternative, reasonable front pay;

2. Full back pay;

3. Compensatory damages in an amount to be determined at trial;

4. (Against defendant Cooper only) Punitive damages in an amount to be determined at trial;

5. Reasonable attorney's fees, expert witness fees, costs, prejudgment interest and post-judgment interest; and

6. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Thomas A. Sobecki*
Thomas A. Sobecki (0005210)
405 Madison Avenue, Suite 910
Toledo, Ohio 43604
Telephone: 419-242-9908
Fax: 419-242-9937
E-mail: tsobecki@tomsobecki.com
Attorney for Plaintiff
E. Ishmael Parsai

## JURY DEMAND

Plaintiff Parsai demands a trial by jury on all counts.

*/s/ Thomas A. Sobecki*
Thomas A. Sobecki
Attorney for Plaintiff
E. Ishmael Parsai