UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

E. Ishmael Parsai,                                          Case No. 3:23-cv-2141

           Plaintiff,

v.                                                 MEMORANDUM OPINION
                                                    AND ORDER

University of Toledo, *et al.*,

           Defendants.

## I. INTRODUCTION

Defendants Linda Speer, Andrew Casabianca, Bina Joe, Beata Lecka-Czernik, James Van Hook, and Kandace Williams ("12(b)(6) Defendants") have filed a motion to dismiss the claims against them under Rule 12(b)(6). (Doc. No. 19). Defendants University of Toledo, Christopher Cooper, and Risa Dickson ("12(c) Defendants") have filed a motion for partial judgment on the pleadings under Rule 12(c). (Doc. No. 20). Plaintiff E. Ishmael Parsai filed briefs opposing both motions. (Doc. Nos. 21 & 23). The 12(b)(6) Defendants filed a brief in reply (Doc. No. 24), as did the 12(c) Defendants (Doc. No. 25). For the reasons stated below, I grant both motions.

## II. BACKGROUND

Parsai was born in Iran. (Doc. No. 14 at 3). He emigrated to the United States in 1976, where he completed his education, married, and started a family. (*Id.*). He has been an American citizen since 1988. (*Id.* at 12). He is a nuclear physicist by trade with a specialty in medical physics. (*Id.* at 4).

Parsai worked in the College of Medicine and Life Sciences at the University of Toledo for 29 years, until his termination on September 22, 2022. (*Id.* at 5). Parsai held several positions during his career at the University, including a tenured professorship. (*Id.* at 4). But as of July 1, 2022, he was employed under a one–year contract as a non-tenure-eligible post-retirement faculty member. (*See* Doc. No. 14-4). At the time he was fired, when he was 69 years old, he was the Director of the Graduate Medical Physics Program and Chief of the Medical Physics Division in the Department of Radiation Oncology at the University. (Doc. No. 14 at 5, 12).

In December of 2020, an Iranian graduate student at the University of Toledo came under investigation by the United States Department of Energy after an official at the Los Alamos National Laboratory suspected the student of accessing a computer code developed by the Laboratory. (*See id.* at 12-13). Known as MCNP, the code is regulated by the United States National Security Administration, which strictly prohibits citizens of Iran from accessing the code. (*Id.* at 13); *see* 10 C.F.R. § 810. But U.S. citizens, U.S. permanent residents, and citizens of certain other countries may legally access the code. (*Id.*). Parsai himself was authorized to access the code for his medical physics research, though he seldom did so. (Doc. No. 14 at 13).

The investigation made its way to Parsai because Parsai was the Director of the University's Medical Physics program. (*Id.* at 14). An investigating agent, Timothy Valentine, asserted in an email to Parsai that the student "violat[ed] U.S. Federal regulations" by "utiliz[ing] a version of MCNP without the approval of the U.S. Federal government," including by "publish[ing] several papers on the use of MCNPX for medical physics while at the Mashad University of Medical Sciences in Mashad, Iran." (*Id.* at 14).

In June of 2022, an agent from the U.S. Department of Energy and two other federal agents interviewed several people at the University of Toledo, including the student and Parsai. (*Id.* at 14). According to Parsai, his interview and questioning by the federal agents "focused on Parsai being

2

from Iran and his department at The University of Toledo having graduate students from Iran." (*Id.* at 14-15). After being "put in the position of defending The University of Toledo's admission of students from Iran" during the interview, he alleges was "abandoned" by the University's attorney, Sara Wisniewski. (*Id.* at 15). Parsai asserts he endured extensive questioning about emails he had sent during his lengthy employment at the University, as well as a hostile line of inquiry about whether his students were "spies for the Iranian Government." (*Id.*). Parsai alleges the University became concerned about its own criminal liability related to the student's use of the MCNP code, which prompted it to hire an outside law firm to conduct an investigation. (*See id.* at 16).

On September 22, 2022, the University fired Parsai "for cause" via a letter signed by Cooper, the Dean of the College of Medicine & Life Sciences. (*Id.* at 6, 7; Doc. No. 14-1). Parsai attached a copy of the letter as an exhibit to his amended complaint. (*See* Doc. No. 14-1). The letter cited Article I, section (T)(1)(b)(7) of the Faculty Rules and Regulations, which provides that "violation of University policy, rules, regulations, procedures, or bylaws" justifies termination. (Doc. No. 14-2 at 11). The letter also informed Parsai of his "right of appeal and due process" under the Faculty Grievance and Appeals Policy 3364-72-51. Parsai also attached the Faculty Rules and Regulations for the College of Medicine & Life Sciences and the Faculty Grievance and Appeals Policy as exhibits to his amended complaint. (*See* Doc. Nos. 14-2 & 14-3).

Parsai alleges he was not provided "adequate notice of the charges against him" before he was fired. (Doc. No. 14 at 7). He alleges that Nicholas Sperling, a 47-year-old non-Iranian assistant professor in the University of Toledo's Department of Radiation Oncology was not terminated despite being "much more involved with the student's project than Parsai ever was." (*Id.* at 16).

Parsai appealed his termination on October 5, 2022. (*Id.* at 8). Pursuant to a University of Toledo policy, a "Hearing Committee of the Faculty Grievance Committee" conducted a hearing on January 6, 2023. (*Id.*). Speer, a professor and Chair of the University's Department of Family

3

Medicine, chaired the hearing. (*Id.* at 7, 8). Casabianca, Joe, Lecka-Czernik, and Van Hook rounded out the rest of the Hearing Committee. (*Id.* at 8). All four are professors at the University of Toledo. (*Id.* at 6-7). In addition, Parsai alleges Williams, the Associate Dean for the University's College of Medicine & Life Sciences Graduate Programs, "attended" the hearing "as the safety officer" and to "assure a fair process." (*Id.* at 8). Parsai attended the hearing and testified as a witness. (*Id.*). Cooper also attended the hearing and testified as a witness, though he stayed in his office—immediately adjacent to the hearing room—with his door open for the first part of the proceedings. (*Id.*).

The Hearing Committee upheld the termination recommendation—though Parsai alleges he was not provided with this information or timely informed of this result, contrary to University policy. (*Id.* at 10). In addition, Parsai had "twenty working days" within which to file an appeal of the Hearing Committee's decision. (*Id.* at 9-10). Because of the alleged failure to inform him of the decision, Parsai alleges he missed his chance to appeal the Hearing Committee's recommendation since he "had no knowledge of" it. (*Id.* at 10). He alleges he was made aware of the recommendation, and its subsequent ratification by Dickson, the University's Interim Provost, on May 19, 2023, in a letter he received "through communication from the [Ohio Civil Rights Commission]." (*Id.* at 10).

Parsai filed a charge with the Ohio Civil Rights Commission on March 13, 2023. (*Id.* at 17; Doc. No. 14-5 at 1). A Notice of Right to Sue was issued on September 5, 2023. (Doc. No. 14-6). Parsai filed this lawsuit on November 2, 2023. (Doc. No. 1). He alleges the following: (1) a claim under 42 U.S.C. § 1983 for the violation of his procedural due process rights under the United States Constitution against all defendants; (2) breach of contract for the violation of his employment agreement against the University and Cooper; (3) breach of contract against the University for the failure to follow its own policies and regulations, (4) discrimination on the basis of race, national

4

origin, and ancestry in violation of Title VII of the Civil Rights Act of 1964 against the University and Cooper; (5) discrimination on the basis of age in violation of the ADEA against the University and Cooper; and (6) violation of 42 U.S.C. § 1981 against the University and Cooper.  (*See* Doc. No. 14).  He sues all eight natural person defendants in their official and individual capacities.  (*See id.* at 6-7).  Parsai seeks injunctive relief (reinstatement to his former position) and monetary damages for all claims, and he seeks punitive damages against Cooper for his § 1983 procedural due process and breach of contract claims.  (*See id.* at 17-19).

### III.    STANDARD

Rule 12 provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A motion for judgment on the pleadings filed under Rule 12(c) of the Federal Rules of Civil Procedure is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).  A court must accept as true all of the factual allegations contained in the complaint when ruling on a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal citations and quotation marks omitted)).

The plaintiff must offer more than conclusory allegations or legal conclusions masquerading as factual allegations. *Twombly*, 550 U.S. at 555 (The complaint must contain something more than "a formulaic recitation of the elements of a cause of action.").  A complaint must state sufficient facts which, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility

that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

Courts must read Rule 12(b)(6) in conjunction with Rule 8(a)(2)'s requirement that a plaintiff need offer "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555); *see also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295-96 (6th Cir. 2008). The court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV. ANALYSIS

In their briefing, the parties considerably narrowed the scope of the claims they contest. Parsai agrees a number of his claims should be dismissed: (1) his § 1983 claim for procedural due process violations against Speer, Casabianca, Joe, Lecka-Czernik, Van Hook, Williams, Cooper, and Dickson for monetary damages in their official capacities, and against the University; (2) his § 1981 claim in its entirety; (3) both breach of contract claims in their entirety, (4) the Title VII claim against Cooper and Dickson in their personal capacities, and (5) the ADEA claim against Cooper and Dickson in their personal capacities and against the University. (*See* Doc. No. 21 at 10-11; Doc. No. 22 at 8, 24-25). So, I will dismiss those claims.

6

Conversely, the 12(c) Defendants do not seek the dismissal of Parsai's Title VII claim against the University or his ADEA claim for injunctive relief against Cooper and Dickson in their official capacities. (*See* Doc. No. 20 at 15). Those claims remain.[1]

I focus my analysis on Parsai's § 1983 procedural due process claims. This forms the locus of the parties' dispute in these motions.

### A.   Section 1983 Procedural Due Process Claim – Qualified Immunity

Section 1983 imposes civil liability on individuals who, while acting under color of state law, deprive a citizen of their federal constitutional or statutory rights. 42 U.S.C. § 1983. To state a claim under § 1983, a plaintiff must plausibly allege (1) a deprivation of a right, privilege, or immunity under the United States Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The natural person Defendants do not contest they were acting under color of state law. (*See*

---

[1] Parsai's amended complaint contains four "counts." (*See* Doc. No. 14). Count 1 clearly corresponds to his § 1983 procedural due process claim, and Counts 2 and 3 clearly correspond to each of his two breach of contract claims. (*See id.*). But the caption to Count 4 lumps together several causes of action, including "Title VII" the "Age Discrimination in Employment Act," the "Civil Rights Act of 1866 (42 U.S.C. § 1981)" and the "Civil Rights Act of 1871 (42 U.S.C. § 1983)," along with the phrase "Race/national origin/ancestry discrimination [] Age discrimination." (*Id.* at 12). Given that Count IV, by its terms, includes several distinct claims for relief, it is not immediately obvious which alleged underlying statutory or constitutional violation or violations form the basis for the § 1983 claim alleged in Count IV. *See Meals v. City of Memphis*, 493 F.3d 720, 727 (6th Cir. 2007) ("Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced"). Defendants appear to construe the § 1983 claim in Count IV as one for a violation of the Constitution's equal protection clause, though they offer no argument as to why any § 1983 equal protection claims—as opposed to § 1983 procedural due process claims—should be dismissed. (*See* Doc. No. 19 at 2, 7; Doc. No. 20 at 2, 7). Parsai does not specifically mention the § 1983 claim in Count IV of his complaint anywhere in his briefing opposing Defendants' motions. (*See* Doc. Nos. 21 & 23). I explained above that Defendants do not seek to dismiss parts of Parsai's Title VII and ADEA claims, both of which are contained within Count IV of the amended complaint. (*See* Doc. No. 14 at 12). So, to the extent Parsai's § 1983 claim in Count IV is based on a claim for a violation of federal constitutional or statutory law which I have not otherwise dismissed, the § 1983 claim in Count 4 remains as well.

7

Doc. No. 19 at 10-12; Doc. No. 20 at 11-12). Instead, they argue they are entitled to qualified immunity. (*See id.*)

A government official performing a discretionary function is immune from a civil suit for money damages if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts qualified immunity, a court must determine: (1) whether the plaintiff has shown the defendant's actions violated the plaintiff's constitutional rights; and (2) whether the constitutional right at issue in the case was "clearly established" at the time the defendant acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (internal quotation marks omitted). A court can consider these questions in either order. *Colson v. City of Alcoa*, 37 F.4th 1182, 1189 (6th Cir. 2022) (citing *Pearson*, 555 U.S. at 236). Because it is dispositive, I consider first whether Parsai has shown a defendant's actions violated his constitutional rights.

Parsai alleges the natural person Defendants violated his Fourteenth Amendment procedural due process rights. (*See* Doc. No. 14 at 1). The Fourteenth Amendment's Due Process Clause forbids a state from "depriv[ing] any person of life, liberty, or property[ ] without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a procedural due process claim, Parsai must show (1) that he had a "life, liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment," (2) that he was "deprived of this protected interest within the meaning of the Due Process Clause," and (3) that he was not afforded "adequate procedural rights" prior to the deprivation of this protected interest. *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (quoting *Med Corp. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002)) (additional citation and quotation marks omitted).

8

All natural person Defendants argue Parsai's claim fails because he cannot point to any cognizable protected interest of which they deprived him, because he received adequate pre-deprivation process, and because he received adequate post-deprivation process. (*See* Doc. No. 19 at 7-10; Doc. No. 20 at 7-10). The natural person defendants other than Cooper argue Parsai's claim fails because he does not allege the natural person defendants other than Cooper were personally involved with the alleged deprivation. (*See id.*). Parsai disagrees on each point. (*See* Doc. No. 21 at 12-22, Doc. No. 23 at 11-20). Because I conclude Parsai has not plausibly alleged he has a protected interest sufficient to trigger the procedural protections of the Due Process Clause, I need not reach, and do not reach, Defendants' remaining arguments.

Parsai asserts he had a property interest in his continued employment with the University and a liberty interest in his good reputation. (*See* Doc. No. 21 at 12-19; Doc. No. 23 at 11-18). The Defendants say Parsai has no property interest because he was a non-tenured employee on a one-year employment contract with the University. (*See* Doc. No. 24 at 5-7; Doc. No. 25 at 5-7).[2] They further contend he has no protected liberty interest in his reputation because he has not identified any public statements made by any defendant giving rise to reputational harm. (*See* Doc. No. 24 at 4-5; Doc. No. 25 at 3-5).

### 1. Property Interest in Continued Employment

When derived from state statutory law, "government employees have a cognizable property interest in their job if they have tenure, are only removable for cause, or it can be legitimately implied that they have such status." *Hasanaj v. Detroit Pub. Schs. Cmty. Dist.*, 35 F.4th 437, 448 (6th Cir. 2022). But where the "claimed property right derives from contract," that contract alone cannot serve as the source of a cognizable property interest because "the availability of a state breach-of-

---

[2] "[T]he Due Process Clause also protects interests of life," not just liberty and property. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 n.3 (1985). Parsai does not argue he has pled the deprivation of any interest in his life. (*See* Doc. Nos. 21 & 23).

9

contract remedy defeats the due-process claim." *Kaminski v. Coulter*, 865 F.3d 339, 348 (6th Cir. 2017); *accord Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273-74 (6th Cir. 1988) ("a nontenured employee[] . . . has a property interest in employment for the duration of the employment contract, but the deprivation of that finite interest can be compensated adequately by an ordinary breach of contract action").

While Parsai pleads he used to be a tenured professor at the University of Toledo, he acknowledges this was not the case by the time he was fired in 2022. (*See* Doc. No. 14 at 11). Parsai, in fact, brings a state-law breach of contract claim based on the alleged violation of his one-year, nontenured employment agreement with the University, and he attaches the agreement "as Exhibit D" to his complaint. (*Id. see* Doc. No. 14-4). I may consider this document because it is "referred to in the Complaint and . . . central to the claims contained therein." *Bassett*, 528 F.3d at 430. The letter, captioned "The University of Toledo Faculty Re-Appointment Letter for Rehired Retirees," offers a 12 month, "Non Tenure Eligible" term of employment from July 1, 2022 to June 30, 2023 for a total salary of $237,500. (Doc. No. 14-4). The appointment "supersedes any previous appointment" and is subject to Parsai's "Letter of Intent," the University's faculty rules and regulations, and the University's policies and procedures. (*Id.*).

Parsai points to nothing in the extra-contractual sources mentioned in the letter that would render his term of employment anything other than a time-limited, nontenured position. (*See* Doc. No. 21 at 12-19; Doc. No. 23 at 11-18); *see Carr v. Bd. of Trustees of Univ. of Akron*, 465 F. Supp. 886, 902 (N.D. Ohio 1979) (holding "the grant of specific procedural rights to a non-tenured faculty member in the context of a formal tenure system is not sufficient to invoke the guarantees of due process under the Fourteenth Amendment"); *Setayesh v. Tennessee*, Case No. 3:18-cv-335, 2018 WL 3364387, at *7 (M.D. Tenn. July 10, 2018) (determining the plaintiff had not adequately pled a property interest where she was denied a specific salary request because "deprivation of property

10

without due process is not actionable under § 1983 when the property interest in question is merely a quantifiable sum of money"). Because Parsai worked under a one-year employment contract that, on its face, does not grant him any right to tenure or to continuing employment after the elapse of the one-year period, his employment cannot serve as the basis for a protected property interest sufficient to trigger procedural due process protections. *See Helm v. Eells*, 642 F. App'x 558, 556 (6th Cir. 2016) (holding a nontenured professor had no property right in continued employment absent a "clearly implied promise of continued employment").

Recognizing this, Parsai "[c]oncede[s]" that "the Amended Complaint does not explicitly set forth a property interest that invokes constitutional protection." (Doc. No. 21 at 16; Doc. No. 23 at 15). Nevertheless, he urges, he can point to a property claim arising out of a "common practice and understanding" that his employment was functionally continuous, even if that right does not arise from his employment contract itself. (Doc. No. 21 at 16-17; Doc. No. 23 at 17-18) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 468 (6th Cir. 2009)).

The line of cases to which Parsai refers recognizes that "unwritten" but "mutually explicit understandings" may create a cognizable property interest in continued employment "in light of the policies and practices of the institution." *Perry v. Sindermann*, 408 U.S. 593, 601, 602 (1972). But Parsai points to no alleged facts regarding the policies and practices of the University of Toledo with respect to single-year employment contracts for nontenured employees, and he likewise points to no evidence he had a legitimate expectation in the continuous renewal of his contract. *Cf. Gunasekera*, 551 F.3d at 467 (finding the plaintiff alleged he had a protected property interest in his Graduate Faculty status where the university provided four criteria for retaining that status and where that status had "never been revoked or suspended" before). I conclude Parsai has failed to plead he had a cognizable property interest in his nontenured employment at the University.

    **2.**     **Liberty Interest in Reputation**

Harm to a person's "reputation, good name, honor, or integrity" constitutes an injury to a protected liberty interest "only when five elements are satisfied." *Ludwig v. Bd. Of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). First, "stigmatizing statements must be made in conjunction with the plaintiff's termination from employment." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584 (6th Cir. 2021) (quoting *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002)) (additional citation and quotation marks omitted). Second, those statements must assert more than "merely improper or inadequate performance, incompetence, neglect of duty, or malfeasance." *Id.* Third, "the stigmatizing statements or charges must be made public." *Id.* Fourth, "the plaintiff must claim that the charges made against him were false." *Id.* Finally, "the public dissemination must have been voluntary." *Id.*

If the plaintiff pleads these elements, "he is entitled to a name-clearing hearing upon request." *Id.* But—crucially—"failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Kaplan*, 10 F.4th at 584 (quoting *Quinn*, 293 F.3d at 323). This is because "[i]t is the denial of a requested name-clearing hearing that deprives the plaintiff of his liberty interest without due process." *Kaplan*, 10 F.4th at 584.

Parsai has failed to plead a reputation-based liberty interest for two reasons.

First, he does not plausibly allege that any statements were "made public." *Kaplan*, 10 F.4th at 584. This requirement "limit[s] a constitutional claim to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities." *Hade v. City of Fremont*, 246 F. Supp. 2d 837, 845 (N.D. Ohio 2003) (citing *Brandt v. Bd. of Co-op. Ed. Servs.*, 820 F.2d 41, 44 (2d Cir. 1987)). *See also Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) ("A name-clearing hearing is required only if an employer creates a false and defamatory impression about a particular employee in connection with his termination"); *Kiser v.*

12

*Lower*, 236 F. Supp. 2d 872, 879 (S.D. Ohio 2002) (rejecting the plaintiff's reputation-based liberty interest claim where the employer "failed to state publicly any reasons for his termination").

The only statements Parsai identifies in his complaint are those contained in his termination letter, which was signed by Cooper and copied (by "cc") to three other University of Toledo administrators. (*See* Doc. No. 21 at 14; Doc. No. 23 at 14). But Parsai does not assert the letter, or statements in it, were ever disseminated, or were likely to be disseminated, outside that small circle of University employees. (*See id.*). Further, the letter itself was "hand delivered" to Parsai, underscoring its nature as a private, rather than public, communication. (Doc. No. 14-1).

In *Ruppe v. Knox Board of Education*, the court concluded the assertion that the "plaintiff's performance deficiencies were 'disclosed to other Board employees, parents, and students'" was too "conclusory" to plausibly allege "any stigmatizing statements have been made public." 993 F. Supp. 2d 807, 812 (E.D. Tenn. 2014). Here, Parsai does not even allege in *conclusory* fashion that the defendants made any public-facing statements about him. So, he cannot show he suffered an injury to his reputation sufficient to trigger procedural due process protections.

Parsai attempts to salvage this element of the five-part test by pointing to the allegation that his injuries included "impairment of future employment prospects, emotional suffering, mental anguish, humiliation, indignity, inconvenience, and damage to his reputation." (Doc. No. 14 at 11). He says it is "implicit" in this statement that "stigmatizing statements or charges were made public." (Doc. No. 21 at 15-16; Doc. No. 23 at 14). But I may only draw "reasonable" inferences in Parsai's favor. *Iqbal*, 556 U.S. at 678. It *is* plausible to infer that Parsai suffered these injuries because he was terminated. It is *not* plausible to infer, from this vague statement alone, that Parsai suffered these injuries from the public dissemination of a hand-delivered termination letter addressed only to him and three other people. This lone allegation does not "raise . . . above the speculative level" the possibility that stigmatizing statements about Parsai were made public. *Twombly*, 550 U.S. at 555.

13

Second, even if Parsai could show he has suffered the requisite kind of harm to his reputation, he has not pled he requested a name-clearing hearing. Unquestionably, Parsai requested a hearing to contest his termination. (*See* Doc. No. 14 at 8). But a name-clearing hearing is different: it "must be adequately publicized" because "without publicity the hearing cannot perform its name-clearing function." *Gunasekera*, 551 F.3d at 470, 471. Thus, a request for a name-clearing hearing must "alert" the employer that the employee is "complaining of a lack of due process in connection with a liberty interest as opposed to a lack of due process in connection with his claimed property interest." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 411 (6th Cir. 1997) (concluding a letter accusing the defendants of denying the plaintiff due process of law did not adequately request a name-clearing hearing because it referred to his termination, not his alleged reputational harm). *See also Garner v. City of Cuyahoga Falls*, 311 F. App'x 896, 899, 900-01 (6th Cir. 2009) (affirming the dismissal of a reputational harm-based procedural due process claim under Rule 12 because the plaintiff's complaint had "not specifically stated that he requested a name-clearing hearing"); *Frost v. Univ. of Louisville*, 392 F. Supp. 3d 793, 799, 807 (W.D. Ky. 2019) (finding no injury to a protected reputation-based liberty interest where the plaintiff requested the reconsideration of the conclusions reached in his disciplinary proceeding but did not request a name-clearing hearing).

Parsai does not point to any allegation from which it could plausibly be inferred that he asked for, and was denied, a hearing for the specific purpose of clearing his name. (*See* Doc. No. 21 at 16; Doc. No. 23 at 15). He alleges he appealed his termination letter "in accordance with the Faculty Grievance and Appeals policy 3364-72-51" and that a hearing took place where he and others testified as witnesses. (Doc. No. 14 at 8). The Grievance and Appeals policy, attached as an exhibit to Parsai's amended complaint, outlines an internal administrative process for resolving employee grievances. (*See* Doc. No. 14-3). It provides that notice of a grievance hearing should be issued to the "grievant and to the director of faculty affairs," and the results of that hearing and any

14

appeals should be issued to "the grievant and all other affected parties." (*See id.* at 4, 5). I may not plausibly infer these hearings are public.

Further, the hearing committee is tasked with making "findings of fact" and issuing "recommendations . . . as to corrective action," not with restoring the reputation of aggrieved faculty members. (*Id.* at 4). And while Parsai alleges the hearing and the Grievance Committee's decision-making thereafter were deficient in several respects, none of them relate in any way to the clearing of his name via a publicized proceeding. (*Id.* at 10-11). Therefore, he has not plausibly alleged he "requested a name-clearing hearing and was denied that hearing." *Quinn*, 293 F.3d at 322.

For these reasons, I conclude Parsai has not plausibly alleged an injury to a protected liberty interest in his reputation. Further, because Parsai has failed to plead an injury to any protected interest, as required to bring a procedural due process claim, I grant qualified immunity to the natural person defendants, and I dismiss Count 1 of his amended complaint in its entirety. (*See* Doc. No. 14 at 3).

**B.    Request For Leave to Amend**

In his briefing, Parsai suggests in passing that I "should grant leave to amend any allegation or facts in support thereof as justice so requires to ensure that this case is resolved on its merits." (Doc. No. 21 at 19, 20, 22; Doc. No. 23 at 18, 19, 20). Rule 15 provides that a party may amend a pleading once "as a matter of course" and subsequently only "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989). "Notice and substantial prejudice

to the opposing party are critical factors in determining whether an amendment should be granted." *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973).

Parsai includes several, identical single-sentence requests to amend his complaint at the end of paragraphs in which he acknowledges the possibility I may find his pleadings deficient. (*See* Doc. No. 21 at 19, 20, 22; Doc. No. 23 at 18, 19, 20). These requests do not indicate what, if any, changes or additions Parsai may seek to make to his complaint, and he does not attach a copy of a proposed amended complaint to either of his briefs in opposition. (*See* Doc Nos. 21 & 23). "Although FRCP 15 instructs courts to 'freely give leave' to amend, that liberal policy does not apply to [a] plaintiff['s] one-sentence request" in a brief opposing dismissal. *Kuyat v. BioMetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014).

This kind of "throwaway language," the Sixth Circuit has held, is "not a motion to amend" at all. *Id.* (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)) (internal quotation marks omitted). In addition, Parsai did not "attach a copy of the amended complaint" or otherwise provide the defendants with adequate notice of the content of any proposed amendments. *Kuyat*, 747 F.3d at 444 (citing *Shillman v. United States*, 221 F.3d 1336, 2000 WL 923761, at *6 (6th Cir. 2000)) (table decision). Because Parsai's unreasoned references to Rule 15 do not qualify as a motion for leave to amend, and because he has not provided the defendants with notice of the content of any proposed amendments, I reject his request at this time.

## V.  CONCLUSION

For the reasons stated above, I grant Casabianca, Joe, Lecka-Czernik, Speer, Van Hook, and William's motion to dismiss under Rule 12(b)(6). (Doc. No. 19). I grant Cooper, Dickson, and the University's motion for judgment on the pleadings under Rule 12(c). (Doc. No. 20). I dismiss all of Parsai's claims except: (1) his Title VII claim against the University, and (2) his ADEA claim for

16

injunctive relief against Cooper and Dickson in their official capacities. Further, as I explained above, to the extent Parsai's § 1983 claim in Count 4 is based on an underlying claim for a statutory or constitutional violation that I have not otherwise dismissed, the § 1983 claim in Count 4 remains as well.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge