UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

E. Ishmael Parsai,

Plaintiff,

v.

University of Toledo, *et al.*,

Defendants.

Case No. 3:23-cv-2141

MEMORANDUM OPINION
AND ORDER

## I. INTRODUCTION AND BACKGROUND

Plaintiff E. Ishamel Parsai formerly was employed at the University of Toledo College of Medicine and Life Sciences as the Director of the Graduate Medical Physics Program and Chief of the Medical Physics Division in the Department of Radiation Oncology. (Doc. No. 14 at 5). Parsai was terminated from those positions on September 22, 2022, for violating "University policy, rules, regulations, procedures[,] or by-laws." (Doc. No. 14-1 at 1). Parsai's termination followed governmental and university investigations into the access of the Monte Carol N-Particle (MCNP) code by students who were not authorized to do so. (*See* Doc. No. 14 at 12-16). Parsai contends his termination was not justified and asserts claims for violation of his constitutional rights pursuant to 42 U.S.C. § 1983, for breach of contract, and for age, race, and national origin discrimination in violation of federal law.

During the course of discovery in this case, the parties developed a good faith dispute regarding the discoverability of a report prepared by attorneys with Barnes & Thornburg LLP, a law firm appointed by the Ohio Attorney General to investigate the unauthorized access to the MCNP

code (the "B&T Report"). Pursuant to my Order, (Doc. No. 35), Defendants the University of Toledo, Christopher Cooper, and Risa Dickson filed a motion for a protective order shielding the B&T Report from disclosure, (Doc. No. 36), and emailed a copy of that report to my chambers for *in camera* review. Parsai filed a brief in opposition, (Doc. No. 37), and Defendants filed a brief in reply. (Doc. No. 38). For the reasons stated below, I grant Defendants' motion.

## II. Standard

The Federal Rules of Civil Procedure provide that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," subject to certain listed considerations. Fed. R. Civ. P. 26(b)(1). But a "court must limit the . . . extent of discovery otherwise allowed . . . if it determines that . . . (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

## III. Discussion

Defendants seek a protective order prohibiting Parsai from obtaining the B&T Report in discovery because, they argue, it is protected by the attorney-client privilege and the attorney-work-product doctrine. (Doc. No. 14 at 5-9). Parsai disagrees, arguing that Barnes & Thornburg's failure to interview him or Dr. Diana Shvydka, the unauthorized student's PhD advisor, during its investigation "not only assured that the University would NOT have all available facts, but endangered the soundness of any purported legal advice based upon the deliberately truncated investigation, since the law firm would be missing the most important information it would need to advise the University." (Doc. No. 37 at 2). In Parsai's view, those omissions fatally undermine Defendants' claims that the B&T Report was prepared for the purpose of providing legal advice or in anticipation of litigation. (*Id.* at 3-9).

The attorney-client privilege is designed "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance

of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Courts "'narrowly construe[ ]'" the attorney-client privilege because it "'reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Collis,* 128 F.3d 313, 320 (6th Cir. 1997)) (further citation omitted). "The privilege applies to confidential communications between a lawyer and his client arising from the client's request for legal advice . . . to assess risks of criminal and civil liability." *In re FirstEnergy Corp.*, 154 F.4th 431, 436 (6th Cir. 2025) (citing *In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006), and *Upjohn*, 449 U.S. at 394-95).

Having reviewed the B&T Report, I conclude the B&T Report is shielded from disclosure by the attorney-client privilege because it contains "outside counsels' analyses about what acts occurred, whether those acts were illegal, and what criminal and civil consequences might ensue." *In re FirstEnergy*, 154 F.4th at 437 (citing *Upjohn*, 449 U.S. at 395, 397). The Ohio Attorney General's Office appointed Barnes & Thornburg "to conduct an internal investigation into possible violations of United States export control laws and regulations by UT faculty and students, as well as to represent UT in any investigative action by the federal government regarding such violations." B&T Report, dated October 10, 2022.[1] And while the B&T Report contains some discussion of potential violations of UT policy, I agree with Defendants' assertion that this discussion "is incidental to the primary focus of the report." (Doc. No. 36 at 6). Therefore, I grant Defendants' motion for a protective order.[2]

[1] As I noted above, Defendants emailed the B&T Report to my chambers for *in camera* review, and it has not been filed on the docket. But, because the discoverability of the B&T Report may become an issue for a future appeal in this case, I hereby order the Clerk of Court to file the B&T Report and the attendant findings of fact under seal.

[2] Because application of the attorney-client privilege fully resolves this matter, I conclude I need not discuss the parties' work-product arguments.

## IV. CONCLUSION

For the reasons stated above, I grant the motion of Defendants the University of Toledo, Christopher Cooper, and Risa Dickson, for a protective order. (Doc. No. 36).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge